UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL SAMPERIO,<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>RON DAVIS, Warden,<br><br>　　　　　　　Respondent. | No. 2:14-cv-2455 KJM AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner, currently incarcerated in Valley State Prison, who proceeds pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner paid the filing fee. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c), and Local General Order No. 262.

The petition challenges a 2012 prison disciplinary decision. Presently pending is respondent's motion to dismiss the petition on four alternate grounds: (1) petitioner failed to exhaust his state court remedies; (2) the petition was untimely filed; (3) this court is without jurisdiction to consider the petition because the relief sought would not affect the fact or duration of petitioner's confinement; and (4) petitioner has not asserted a liberty interest invoking due process protections. ECF No. 9. Petitioner filed an opposition, ECF No. 10, and respondent filed a reply, ECF No. 11. Petitioner thereafter filed a surreply, ECF No. 12, which this court has

////

considered.[1]  For the reasons that follow, this court recommends that respondent's motion be granted, and this action be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is serving an indeterminate state prison term of 25 years to life, imposed in 1999.  See Samperio v. Martel, Case No. 1:10-CV-01528 LJO SMS HC, ECF No. 27 at 1 (Findings and Recommendations, adopted April 21, 2011).  According to the instant petition, in 2012 petitioner was an inmate at Mule Creek State Prison (MCSP), assigned to work in the Main Kitchen.  On June 28, 2012, a scullery machine was vandalized and rendered inoperable.  On July 1, 2012, a CDC 128B Chrono issued, identifying petitioner as one of seven inmates who had access to the machine during the relevant date and time frame, and finding that petitioner failed to participate in the investigative process.  On July 11, 2012, pursuant to a Unit Classification Committee (UCC) Program Review, petitioner was removed from his job and the subject CDC 128B Chrono was added to petitioner's Central File (C-File).  See Respondent's Exhibit (Rsp. Ex.) No. 1, ECF No. 9-1 at 34-6.

On July 22, 2012, petitioner submitted an administrative grievance challenging his job removal and the inclusion of the subject chrono in his C-File.  See Rsp. Ex. No. 2, ECF No. 9-1 at 26-9.  Petitioner asserted that he had been assigned to "Section A," not the scullery area, and that he took no part in the vandalism and did not know who did.  Petitioner requested, inter alia, that he be returned to his job and that the chrono be removed from his file.  The Second Level Review (SLR) decision recounted the results of the UCC investigation as follows, id. at 31:

> On 07/01/12, Correctional Sergeant J. Leese authored a CDC 128B that documented the results of an investigation pertaining to vandalism of the tray scullery machine in Facility "C" Dining.  This document indicates that Sergeant Leese believed that the appellant was party to, was responsible for, or had knowledge of the vandalism based on the fact that he was one of the seven inmates identified to stay behind and because he failed to participate in the interview process of the investigation. . . .

---

[1] While the Local Rules do not authorize the filing of a surreply, and the court did not request one, respondent did not object to petitioner's surreply, and the court finds that the additional information set forth therein is material to the court's decision.  A district court may allow a surreply "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief."  Hill v. England, 2005 WL 3031136 at *1 (E.D. Cal. 2005).

> Subsequent to Sergeant Leese's documentation, the appellant's case was reviewed by Facility "C" UCC. Committee determined that although there was insufficient evidence to issue a Rules Violation Report (RVR), they made a discretionary decision to remove appellant from his job assignment. Based on the determination that there was insufficient evidence to issue an RVR, his Work Group was not reduced. Based on the fact that he was involuntarily unassigned, his Privilege Group was reduced to "B" pursuant to C.C.R. 3044(e). It should be noted that inmates do not have a right to a specific job assignment and that classification committees can unassign inmates at any time. The unassignment was not disciplinary or adverse in nature and did not violate the appellant's rights.

On December 10, 2012, petitioner's grievance was denied and exhausted on Third Level Review (TLR), and delivered to petitioner on the same date. Rsp. Ex. No. 2, ECF No. 9-1 at 24-5, 27. The decision noted that petitioner had submitted no evidence in support of removing the subject chrono from his file, and so it would remain there "for informational purposes;" and that, although the chrono could be used for "matters of classification, parole, or social services," petitioner had "not provided any information or evidence that the identified chronos have created an adverse effect to his subsequent work assignments or other program assignment." Id. at 25.

On February 3, 2013,[2] petitioner filed a petition for writ of habeas corpus in the Amador County Superior Court, seeking removal of the subject chrono from his C-File (Case No. 13-HC-1593). See Rsp. Ex. No. 1, ECF No. 9-1 at 4-10. On February 19, 2013, the Superior Court denied the petition, on the ground that it "fail[ed] to establish a prima facie case for relief." Id. at 2-3.

On March 21, 2013, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District (Case No. C073370). Rsp. Ex. No. 2, ECF No. 9-1 at 13-36. On July 18, 2013, the Court of Appeal summarily denied the petition. Id. at 12.

On August 18, 2013, petitioner filed a petition for writ of habeas corpus in the California Supreme Court (Case No. S212876). Rsp. Ex. No. 3, ECF No. 9-1 at 39-51. On November 13,

---

[2] All of petitioner's filing dates referenced herein apply the prison mailbox rule. See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates).

1  2013, the California Supreme Court denied the petition with a citation to In re Dexter, 25 Cal. 3d
2  921, 925-26 (1979).

3        On October 9, 2014, petitioner filed the instant federal habeas petition.

## EXHAUSTION OF STATE REMEDIES

5        Respondent contends that petitioner failed to exhaust his state court remedies because he
6  failed to present to the California Supreme Court the grounds upon which he seeks relief in this
7  court.[3],[4]  Respondent presses his point by noting the California Supreme Court's citation to In re
8  Dexter, 25 Cal. 3d at 925-26, which requires that state prisoners exhaust available administrative
9  remedies before commencing a habeas action in the state courts.

10        Where, as here, a federal habeas petition contains other grounds for denial, requiring state
11  court exhaustion does not serve the underlying purpose of comity.  See Rose v. Lundy, 455 U.S.
12  509, 525 (1982) (Blackman, J., concurring); see also Clark v. Ricketts, 958 F.2d 851, 857 (9th
13  Cir. 1991); Granberry v. Greer, 481 U.S. 129, 135 (1987).  Accordingly, the undersigned
14  bypasses respondent's exhaustion argument and proceeds to respondent's statute of limitations
15  argument.

## STATUTE OF LIMITATIONS

17        Respondent contends that the instant petition should be dismissed as time-barred.  The

---

[3] The exhaustion of state court remedies is a prerequisite to granting a petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal habeas court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).  Exhaustion is a matter of comity and does not affect this court's jurisdiction to entertain petitioner's habeas corpus application.  See Harris v. Superior Court, 500 F.2d 1124, 1126-27 (9th Cir. 1974) (en banc).

[4] Respondent notes that the California Court of Appeal appears to have addressed the merits of petitioner's claims because petitioner submitted to that court the TLR decision denying petitioner's relevant administrative grievance.  See ECF No. 9 at 7; Rsp. Ex. No. 2, ECF No. 9-1 at 12-36.  However, in his petition submitted to the California Supreme Court, petitioner attached only a September 2012 CDCR 22 Inmate Request Form and an August 2012 administrative decision temporarily screening out petitioner's relevant administrative grievance for lack of documentation.  See Rsp. Ex. No. 3, ECF No. 9-1 at 38-51 (particularly ECF No. 9-1 at 50-1).  Petitioner does not dispute these matters, responding only that "[t]o the Supreme Court of California I sent my petition along with an inmate request Form 22, a document that proves that I was not charged with vandalism, as well as other documents."  ECF No. 10 at 2.

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) contains a one-year statute of limitations for filing a habeas petition in federal court. 28 U.S.C. § 2244(d)(1).[5] The parties agree that the limitations commencement date for challenges to prison disciplinary proceedings is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); see also Redd v. McGrath, 343 F.3d 1077, 1082 (9th Cir. 2003); Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004).

In this case, the factual predicate for petitioner's claims was discovered on December 10, 2012, the date that petitioner exhausted administrative review of his relevant grievance. The statute of limitations commenced the next day,[6] on December 11, 2012. The limitations period expired one year later, on December 11, 2013, absent any statutory or equitable tolling.

A. Statutory Tolling

Under AEDPA, the statute of limitations is tolled during the time that a properly filed application for post-conviction or other collateral review is pending in the state courts. 28 U.S.C. § 2244(d)(2). An order of the California Supreme Court denying a petition for writ of habeas corpus is final at the time of filing. See Cal. Rules of Court, Rule 8.532(b)(2)(C),

Petitioner filed his state habeas petition in the Amador County Superior Court on February 3, 2013, thus tolling the limitations period until November 13, 2013, when the California Supreme Court denied the petition. This statutory tolling period of 283 days extended the original deadline of December 11, 2013 for commencing a federal habeas action to Monday, September 22, 2014.[7] However, petitioner filed the instant federal petition seventeen days later,

---

[5] AEDPA's limitation period is calculated from the "latest" of four commencement dates. See 28 U.S.C. § 2244(d)(1)(A) (date on which the judgment became final); § 2244(d)(1)(B) (date on which the illegal state-action impediment to filing was removed); § 2244(d)(1)(C) (date on which the asserted constitutional right was initially recognized by the U.S. Supreme Court and made retroactive to cases on collateral review); and § 2244(d)(1)(D) (date on which the factual predicate of the claim could have been discovered through due diligence).

[6] In computing a statute of limitations, the day an order or judgment becomes final is excluded and the limitations period commences the next day. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001) (citing Rule 6(a), Federal Rules of Civil Procedure).

[7] The calculated deadline is Saturday, September 20, 2014. See Fed. R. Civ. P. 6(a)(1)(C) (period runs until end of the next day that is not a Saturday, Sunday or holiday).

on October 9, 2014. Therefore, absent equitable tolling, the federal petition was untimely filed.

### B. Equitable Tolling

The limitations period is subject to equitable tolling if petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "Equitable tolling is unavailable in most cases, and is appropriate only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (citations and internal quotation marks omitted). "The prisoner must show that the extraordinary circumstances were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citation and internal quotation marks omitted). "Indeed, the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citation and internal quotation marks omitted). Petitioner bears the burden of alleging sufficient facts to support equitable tolling. Pace, 544 U.S. at 418.

In the present case, petitioner seeks equitable tolling for the period during which he attempted, unsuccessfully, to earlier file his initial superior court petition. Petitioner states that he originally sent his habeas petition to the Amador County Superior Court on January 10, 2013; however, because the petition was improperly addressed to the court's prior location, it was returned, designated "unable to forward." See ECF No. 10 at 2, and Pr. Ex. 1, id. at 7. Petitioner explains, id. at 2-3:

> It took me 26 days to be able to send the petition to the new address since it took almost two weeks for the petition to be returned to me. When I found this out, then I had to go to the library to search for the new address and make copies to be able to send the petition to the new address. The previous proves due diligence on my part.

In reply, respondent argues, ECF No. 11 at 2-3:

> Samperio does not allege sufficient facts to warrant equitable tolling. He does not indicate if the superior court's correct mailing address was unavailable to him when he initially mailed his petition. He acknowledges that he was able to locate the correct mailing address in the prison law library after he received the

6

returned mail. (Opp. at p. 3.) Further, Samperio does not fully explain why he waited two weeks to re-send his state-court petition after it was returned as undeliverable. (Id.) Importantly, Samperio does not explain why he waited 330 days to file his federal petition after the California Supreme Court issued its denial. In sum, Samperio fails to demonstrate that he pursued his rights diligently and that the alleged extraordinary circumstance made it "impossible" for him to file his federal habeas petition on time. [Citation omitted.] His request for equitable tolling should therefore be denied.

In his surreply, petitioner asserts, ECF No. 12 at 2:

> I sent the first petition on January 10, 2013, at that time the petition was timely. As I had said in my opposition, it took me 26 days to be able to send the petition to the new address since it took almost two weeks for the petition to be returned to me. And it took me 12 more days to re-send my state-court petition after it was returned as undeliverable.
>
> Reasons: I work as a janitor in Facility B Program Monday to Friday Hours 0800-1500. During my work hours I do not have access to go to the law library. The library opens at night only two days a week Monday and Wednesday. The law library is located in the main yard and we (B-Yard) are allowed to go to the main yard only the days that are scheduled for B-Yard. In one month B-Yard goes to main yard two or three times at night either on Mondays or Wednesdays. That is why it took me 12 more days to be able to go to the law library, look for the new address, make copies, and re-send my state-court petition. (See Exhibit [referencing attached Main Yard Rotational Schedule for Feb. 2015].)
>
> Respondent argues that Samperio does not fully explain why he waited 330 days to file his federal petition after the California Supreme Court issued its denial. [¶] In this case I waited 330 days to file my federal petition because I was waiting to receive my paperwork from my consultation hearing. My correctional counselor gave to me on 8/15/14. . . .

Had petitioner successfully mailed his original petition to the proper address for the Amador County Superior Court, statutory tolling of the limitations period would have commenced 24 days earlier (on January 10, 2013, rather than February 3, 2013) and, assuming no changes in the dates of further review, the instant federal petition would have been timely filed. In assessing petitioner's equitable tolling argument, the court must consider whether petitioner's prison work schedule, combined with his limited access to the prison library, presented extraordinary circumstances beyond petitioner's control that rendered it impossible for him to earlier file his superior court petition. These matters must be viewed in context. Petitioner does

7

1   not explain why he waited a full month (December 10, 2012 to January 10, 2013) after the TLR
2   decision before initially attempting to send his habeas petition to the superior court. The superior
3   court's "new" address was well established in 2013,[8] and therefore presumably available upon
4   appropriate inquiry. Petitioner does not contend otherwise, and provides no explanation for
5   failing to obtain the correct address during the month preceding his initial attempted mailing. The
6   facts do not suggest any explanation other than petitioner's own negligence. While the delay of
7   two weeks between the attempted mailing of the petition and its return were technically beyond
8   petitioner's control, petitioner could have avoided the problem entirely by initially obtaining the
9   correct address. This court is unwilling to find that petitioner's initial carelessness qualifies as an
10  "extraordinary circumstance[] beyond [petitioner's] control" that preventing timely filing.
11  Corjasso, 278 F.3d at 877. The ensuing obstacles were consequences of petitioner's initial
12  carelessness, and thus do not qualify either.

13       More significantly, as emphasized by respondent, after the conclusion of statutory tolling,
14  when the California Supreme Court denied petitioner's habeas petition on November 13, 2013,
15  petitioner waited nearly eleven months, until October 9, 2014, to file the instant federal petition.
16  The only reason asserted by petitioner for this delay is that he was waiting to receive his
17  paperwork from his consultation hearing, which his correctional counselor reportedly gave
18  petitioner on August 15, 2014. See ECF No. 12 at 2. Petitioner does not explain the relevance of
19  these matters, or why he waited nearly two more months after receiving the paperwork before
20  filing his federal petition.

21       The court finds that none of the proffered reasons for petitioner's delays constitute an
22  extraordinary circumstance beyond petitioner's control that prevented petitioner from timely
23  filing his federal petition. For these reasons, the court finds that petitioner is not entitled to

---

[8] The website operated by the Amador County Superior Court indicates that the court moved to its current location in 2007. See https://www.amadorcourt.org/gi-historyOfTheCourt.aspx. The court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

1   equitable tolling.  As a result, the court finds that petitioner's federal petition was untimely filed
2   and must be dismissed on that basis.

## FAILURE TO STATE COGNIZABLE CLAIM

In addition to dismissing petitioner's petition on statute of limitations grounds, the court informs petitioner that his petition does not state a cognizable federal habeas claim.

"[H]abeas jurisdiction is absent . . . where a successful challenge to a prison condition will not *necessarily* shorten the prisoner's sentence." Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004) (emphasis added) (citing Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997)) (expungement of challenged disciplinary records would not necessarily shorten the length of petitioner's confinement because the parole board still had authority to deny parole based on other grounds).  "Habeas jurisdiction does not lie unless relief on the merits would have a likely effect on the duration of custody." Jagerson v. Cate, 2013 WL 2434835, 5 (E.D. Cal. June 4, 2013) (citing Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989)).

Because petitioner is serving an indeterminate sentence of life with the possibility of parole,[9] any correlation between the challenged chrono and petitioner's parole date is too remote and speculative to justify habeas jurisdiction.[10]  "The decision to release a prisoner rests on a myriad of considerations.  And, the prisoner is afforded procedural protections at his parole hearing in order to explain the circumstances behind his misconduct record.  The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 487 (1995) (citations omitted).  "[C]hallenges to disciplinary decisions or administrative classifications with only a speculative effect on future parole prospect fall outside the scope of habeas jurisdiction."

---

[9] Petitioner is serving an indeterminate sentence with a maximum term of life with the possibility of parole.  Petitioner's minimum eligible parole date (MEPD) is December 9, 2019.  See ECF No. 9 at 4 n.2 (citing ECF No. 9-1 at 36).  Petitioner will receive his initial parole consideration hearing one year before he reaches his MEPD.  Cal. Pen. Code § 3041(a).

[10] Petitioner concedes the discretion of the Board of Parole Hearings in considering the impact of the subject chrono when determining petitioner's suitability for parole, as demonstrated by the exhibits attached to petitioner's opposition, which include commendations and positive evaluations of petitioner by prison officials.  See Pr. Ex. 2, ECF No. 10 at 9-13.

9

Jagerson, 2013 WL 2434835 at *5 (citing similar cases).  Because petitioner's actual suitability for release remains speculative, the alleged impact of the subject chrono on the duration of petitioner's custody also remains speculative, thus depriving this court of jurisdiction to consider the matter.

Moreover, petitioner's challenge to the subject chrono does not assert a liberty interest invoking federal due process protections.  "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485.  "The punishment of incarcerated prisoners . . . effectuates prison management and prisoner rehabilitative goals." Id.  The Supreme Court has rejected the notion that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." Id. at 484.  State-created liberty interests protected by the Due Process Clause are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

The subject CDC 128B Chrono (which was of too little consequence to warrant issuance of an RVR), resulted in petitioner's removal from his job and a reduction in his privilege group status.  The Supreme Court has "rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right." Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976).  "[A] challenge to classification status lack[s] habeas jurisdiction because the prisoner 'would not be released from confinement or even be provided with a lesser term of confinement; rather, at most, he would receive a different or lower classification score.'" Davidson v. McClintock, 2014 WL 2921900, *1 (D. Ariz. 2014) (collecting cases) (quoting Franklin v. Gipson, 2013 WL 1339545, *2 (C.D. Cal. 2013)).  Because it is clear that the consequences of the challenged chrono did not impose an "atypical and significant hardship" on petitioner "in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, petitioner has not stated a cognizable due process claim.

For these several reasons, even if the instant petition had been timely filed, petitioner's claims would fail.

////

CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss, ECF No. 9, be granted; and

2. This action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

In his objections, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See 28 U.S.C. 2253(c) (absent a certificate of appealability, an appeal may not be taken from the final decision of a district judge in a habeas corpus proceeding or a proceeding under 28 U.S.C. § 2255).

Any response to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 21, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE